IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| PAUL ADKINS, JR., | Civil Action No. 4:05-cv-00108-HFF-TER |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| FEDERAL BUREAU OF PRISONS, HARLEY G. LAPPIN; KIM WHITE; BOBBY G. COMPTON; JERRY JONES; RODNEY MYERS; JOHN J. LAMANA; TYRONE ALLEN; JOE NEAL; SHERILYN CHEEK, | |
| Defendants. | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Paul Adkins, Jr., ("plaintiff/Adkins"), filed this action[1] on January 24, 2005. This action is construed as being filed pursuant to <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). Plaintiff filed an Amended Complaint on April 26, 2005.[2] Plaintiff alleges that his constitutional rights were violated by defendants who he alleges denied him visitation with Elizabeth Adkins, his purported wife. On April 29, 2005, the defendants filed a motion to dismiss along with a memorandum and declaration in support of that motion (doc.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

[2] It does not appear that the two additional parties named as defendants or the amended complaint were ever served. The two additional defendants plaintiff was seeking to add were Shirley Ausborn, the Associate Warden of Programs at FCI Bennettsville, and Terry Whitehead, Unit Manager, at FCI Bennettsville. However, the same analysis would apply to these defendants.

#22). Because the plaintiff is proceeding pro se, he was advised on or about May 2, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion to dismiss could result in dismissal of his complaint. The plaintiff filed a response on June 6, 2005.

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges defendants violated his constitutional rights with respect to his visitation with his "wife" Elizabeth Adkins. Plaintiff seeks 5,000,000.00 from the defendants, jointly and severally, in compensatory damages. Plaintiff also seeks declaratory judgment and a preliminary injunction.

As previously stated, since plaintiff is a federal prisoner, his constitutional claims are evaluated under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra, which established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. Bivens, 403 U.S. at 397. A Bivens claim is analogous to a claim brought against state officials under 42 U.S.C. §1983; therefore, caselaw involving § 1983 claims is applicable in *Bivens* actions, and vice versa. *See Farmer v. Brennen,* 511 U.S. 825 (1994); Bolin v. Story, 225 F.3d 1234, 1241-1242 (11th Cir.2000); Campbell v. Civil Air Patrol, 131 F.Supp.2d 1303, 1310, n. 8 (M.D.Ala.2001).

The basic facts of the complaint are as follows:

In September 2002, Elizabeth Shelby sought to visit with plaintiff at USP Lee County, Virginia. She was initially added to plaintiff's visiting list and allowed to visit twice, but was

2

subsequently removed from the visiting list. Ms. Shelby was a former Bureau of Prisons (BOP) employee who had worked at the FCI Petersburg, Virginia, during the time plaintiff was incarcerated at that facility. When Ms. Shelby sought to visit with plaintiff, she indicated she knew him "For a while in Virginia." (Complaint, Exhibit E). That statement indicated to prison staff that the relationship between Ms. Shelby and plaintiff began during his incarceration. (Exhibit 1, attachments B, D, and F). Plaintiff appealed the removal of Ms. Shelby from his visiting list at FCI Petersburg, Virginia, through all three levels of Administrative Remedy review. His appeals were denied. (Exhibit 1, attachments A-F).

Subsequently, plaintiff married Elizabeth Adkins, previously known as Elizabeth Shelby and Elizabeth Jiminez, on August 14, 2003, via proxy. (Complaint, Exhibits D and I).

After the marriage, plaintiff requested that his new wife be placed on his visiting list at USP Lee County. (Compliant). In September 2003, plaintiff's request was denied. This denial was based on the fact that Mrs. Adkins had submitted inconsistent information on her visitor forms concerning when her relationship with plaintiff began. (Exhibits C and E). Mrs. Adkins had previously submitted visitor applications in September 2002 and July 2003. (Exhibit E). When asked when and where their relationship began, Mrs. Adkins indicated on one form that they were friends and she had know him for "a while in Virginia." On other forms, she indicated the relationship began in 1987 in Georgia. (Complaint, exhibit E). Due to the inconsistencies and the fact that Mrs. Adkins was a former BOP employee who appeared to have started her personal relationship with plaintiff while he was incarcerated, Defendant Compton decided to deny the requested visitation. Defendants assert such a decision is consistent with a warden's authority under federal regulation.28 C.F.R. §540.40. Plaintiff filed administrative appeals of the decision to the Warden, Regional Director and to the

3

General Counsel of BOP. (Exhibit 1, attachments G-N). The appeals were investigated and denied. Plaintiff filed his appeal of the decision to the General Counsel on or about April 15, 2004, and the decision was denied on June 16, 2004.

Plaintiff was transferred from USP Lee County in April 2004, and arrived at FCI Edgefield, South Carolina on May 13, 2004. (Complaint). Upon arrival at FCI Edgefield, plaintiff was asked who he wanted on his visiting list. Plaintiff had his wife placed on the visiting list at FCI Edgefield in accordance with the regulation which provides that members of the immediate family, including the spouse, "are placed on the visiting list, absent strong circumstances which preclude visiting." 28 C.F.R. § 540.40(a). Mrs. Adkins visited plaintiff at FCI Edgefield in late May 2004.

In an initial review with his Unit Team in June 2004, questions arose about plaintiff's marriage to Mrs. Adkins. (Compliant, exhibit K). The staff at FCI Edgefield began to investigate and learned that plaintiff's wife was a former BOP employee and that they met while plaintiff was incarcerated at the facility where she was employed. FCI Edgefield staff also learned that Mrs. Adkins had previously attempted to visit with plaintiff on at least two other occasions but the requests were denied due to the lack of a prior established relationship and security concerns arising from Mrs. Adkins' former employment with the BOP. (Complaint, Exhibit K). Thus, Mrs. Adkins was removed from plaintiff's visiting list at FCI Edgefield. Plaintiff subsequently wrote to defendant Lamanna asking why his wife had been removed. Defendant Lamanna responded on or about July 1, 2004, stating the reasons for the removal based on security concerns due to prior BOP employment.

Subsequently, plaintiff filed an administrative appeal of the removal of his wife from his visiting list at FCI Edgefield to Defendant Lamanna. (Defendant's exhibit 1 and attachment P). That

appeal was denied. (Defendants' exhibit 1, attachment Q). Plaintiff filed an appeal of that decision to the Regional Director for the Southeast Region which was also denied. Based on the evidence submitted by the defendants, plaintiff has not filed an appeal of the FCI Edgefield decision to the General Counsel. (Defendants' Exhibit 1).

The defendants filed a motion to dismiss with supporting memorandum and attachments on April 29, 2005. The defendants argue that their motion to dismiss should be granted for the following reasons, quoted verbatim:

> Based on the foregoing, the case should be dismissed for lack of subject matter jurisdiction over the United States/Federal Bureau of Prison and the individual defendants in their official capacity, for failure to exhaust administrative remedies, for lack of personal jurisdiction over Defendants Lappin, White, Compton, Jones and Myers, and because respondeat superior does not apply. Additionally, the individual defendants are entitled to qualified immunity. Mr. Adkins has not and cannot state a constitutional violation with respect to the denial of his visitation.

(Defendants' memorandum, p. 29-30).

## B. STANDARD UNDER MOTION TO DISMISS

Defendants bring their motion to dismiss pursuant to Rule 12(b)(1) and (6), Fed.R.Civ.P. A motion to dismiss under Rule 12 tests the sufficiency of the complaint. It does not resolve conflicts of facts. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, the factual allegation in the complaint are accepted as true and the plaintiff is afforded the benefit of all reasonable inferences that can be drawn from those allegations. Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

5

When a claim is challenged under this Rule, the court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party.

### C. SUBJECT MATTER JURISDICTION

The defendants first contend that this court lacks subject matter jurisdiction over the plaintiff's claims against the Bureau of Prisons, and the individual defendants in their official capacities. The Court agrees. A Bivens action cannot lie against either the United States or against federal agents acting in their official capacities. *See* Doe v. Chao, 306 F.3d 170, 184 (4th Cir.2002) ( Bivens action does not lie against either agencies or officials in their official capacity."); 2006 WL 1967054, at *3 (D.S.C. July 12, 2006) (Anderson, J.). First, "[i]t is axiomatic that the United States may not be sued without consent and that the existence of consent is prerequisite to jurisdiction." United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Second, a suit against a federal agency or federal officer in his or her official capacity is equivalent to a claim against the United States. *See* Will v. Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The plaintiff does not allege-and the defendants do not concede-that there has been a waiver of sovereign immunity in this action. Thus, to the extent the defendants are being sued under *Bivens* in their official capacities, the claims are barred by the doctrine of sovereign immunity.[3] And, certainly, the Bureau of Prisons is not subject to suit for the same reasons. Accordingly, this claim should be dismissed with prejudice.

---

[3] To the extent plaintiff seeks declaratory judgment for injunctive relief, plaintiff has not exhausted his administrative remedies. Therefore, this claim should be dismissed.

Sovereign immunity, however, does not bar damage actions against federal officials in their individual capacities for violation of an individual's constitutional rights. *See* Bivens, 403 U.S. at 395-96; Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir.1999). Thus, to the extent the defendants are being sued in their individual capacities under *Bivens,* the plaintiff's claims are not barred by the doctrine of sovereign immunity and the Court has jurisdiction over those claims.

### D. EXHAUSTION OF REMEDIES

Defendants argue plaintiff has failed to exhaust his administrative remedies as to claims regarding his confinement at FCI Edgefield. Defendants submitted the declaration of Jenifer Frundy Hollett, attorney for the United States Department of Justice, Federal BOP at the Consolidated Legal Center, Edgefield, South Carolina. Hollett states that she is familiar with the Administrative Remedy Program for inmates, has access to various BOP records, as previously served as the Administrative Remedy Coordinator, and has been involved in receipting, investigating and responding to inmate appeals at all levels of the review. Hollett asserts the BOP has an administrative grievance procedure through which an inmate may complain about any aspect of his or her confinement. That process begins with an informal complaint by the inmate to his Unit team. If the matter cannot be informally resolved, the inmate may then file a formal complaint with the warden, to which he will receive a written response within 20 days. If dissatisfied with that response, the inmate may appeal to the Regional Director, and will again receive a written response, this time within 30 days. If the inmate is still dissatisfied with the response, he may file a final appeal to the Office of the General Counsel. He will receive a written response to that filing within 40 days of the date his complaint was filed. Hollett states that an inmate has not exhausted his administrative remedies until he has filed and

7

received a response at each level of review. Hollett states the General Counsel is the final level of review under the Administrative Remedy Procedure. 28 C.F.R. §542. (15a). Hollett asserts that the BOP maintains a computerized log of all administrative grievances filed under this Administrative Remedy Program and she has access to that computerized log. Hollett states that she reviewed the log to determine what requests for administrative remedy plaintiff had filed relating to his denial of visitation with his wife, Elizabeth Shelby Jiminez Adkins, at the USP Lee County, Virginia or at the FCI Edgefield, South Carolina. In her declaration submitted to the court, Hollett sets out the detailed history of where plaintiff exhausted his administrative remedies through appeals to the General Counsel for denial of visitation at USP Lee County, Virginia. Then, Hollett states that on or about August 2, 2004, plaintiff filed an Informal Resolution Form at FCI Edgefield, challenging the removal of his wife from his visiting list at the institution. Plaintiff received a response to that filing on August 17, 2004, and did not obtain reinstatement of the visitor. On September 9, 2003, plaintiff filed an appeal to the FCI Edgefield Warden concerning the removal of his wife from his visiting list. That appeal was given Remedy ID Number 350249-F1. In his response, Hollett states Warden LaManna explained the reasons for the removal of Mrs. Adkins from the visiting list. (Defendants' Attachment Q). Hollett asserts plaintiff appealed the Warden's denial of his request to the South East Regional Director on October 18, 2004. That appeal was given Remedy ID Number 350249-R1. (Defendants' attachment R). Hollett asserts that request was denied on November 12, 2004. (Defendants' attachment S). Hollett contends plaintiff has not appealed the decision in Remedy Number 350249-R1 to the General Counsel. Further, Hollett asserts plaintiff has filed three requests for administrative remedy since November 12, 2004, however, none concern the denial of visitation with his wife. Therefore, Hollett states the records reflect plaintiff has not exhausted his

8

administrative remedies with respect to the denial of visitation with his wife or the removal of his wife from his visiting list at FCI Edgefield, South Carolina. Hollett attached copies of the BOP records with respect to her declaration.

The entirety of the plaintiff's case must be dismissed because he has failed to exhaust his administrative remedies with respect to the denial of visitation with his wife at FCI Edgefield. The Prison Litigation Reform Act provides that: "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). Exhaustion is required for, "[a]ll action[s] ... brought with respect to prison conditions, whether under § 1983 or any other Federal law. Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532.

Thus, federal prisoners suing under *Bivens,* must first exhaust inmate grievance procedures in the same way that state prisoners must exhaust administrative processes prior to instituting a Section 1983 suit. *Id.* Exhaustion is a threshold requirement which must be satisfied in order for prisoner complaints to proceed. *See, e.g., Booth,* 532 U.S. at 741 (exhaustion required even where prison grievance system does not permit award of money damages).

To exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim." See Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir.2002). Thus, the inmate must actually and strictly comply with the requirements of the administrative processes. See Woodford v. Ngo, ---- U.S. ----, 126 S.Ct. 2378, 2385 (2006) (holding that proper exhaustion

9

requires using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.)); Houze v. Segarra, 217 F.Supp.2d 394, 396 (S.D.N.Y.2002) (and cases cited therein); *see also Booth,* 532 U.S. at 735 (noting that Booth failed to undertake any intermediate or appellate steps in the administrative process). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." Pozo, 286 F.3d at 1024 (emphasis added); *see also* White v. McGinnis, 131 F.3d 593, 595 (6th Cir.1997) (dismissal is appropriate if the inmate fails to exhaust or only partially exhausts administrative remedies); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir.2000) (same).

As stated above, the defendants represent that the Bureau of Prisons has a three-tiered administrative grievance process. See 28 C.F.R. § 542.10 et seq. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. See  28 C.F.R.  542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden. *See* 28 C.F.R.  542.14. The matter will be investigated, and a written response provided to the inmate. *Id.* If dissatisfied with the response, the inmate may appeal to the Regional Director. *See* 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel. See 28 C.F.R. § 542.15(a). Appeal to the General Counsel is the final level of agency review. *See* 28 C.F.R. § 542.15(a). Thus, a claim has not been administratively exhausted until it has been filed with the General Counsel.

For his failure to properly appeal his grievance to the General Counsel in a timely manner and for other procedural reasons, it appears that the plaintiff has probably defaulted his ability to exhaust necessary remedies. While the Fourth Circuit has not considered this point expressly, the plaintiff's failure to satisfy the exhaustion prerequisite cannot be excused for his inability to cure that

failure now. The United States Supreme Court has refused to " 'read futility or other exceptions into'" the Section 1997e(a) exhaustion requirement. *See Booth,* 532 U.S. at 741 n. 6. Moreover, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. Woodford, 548 U.S. at *8. Therefore, his Bivens claims should be dismissed. *See* Yousef v. Reno, 254 F.3d 1214, 1221 (10th Cir.2001) (Bivens); Pozo, 286 F.3d at 1024 (Section 1983) ("Failure to do what the state requires bars, and does not just postpone suit."); Spruill v. Gillis, 372 F.3d 218, 230 (3rd Cir.2004)); Gallego v. US, 2005 WL 1653166 (M.D.Pa.2005) (Bivens).

In the event the district Judge rejects this Court's recommendation that the action be dismissed on jurisdictional or exhaustion grounds, the Court would make the following additional recommendations in regards to matters of qualified immunity and personal jurisdiction.[4]

## E. QUALIFIED IMMUNITY

Defendants also contend that to the extent plaintiff seeks to proceed against the defendants in their individual capacities, the defendants are entitled to qualified immunity pursuant to Harlow

---

[4] Additionally, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any prisoner, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previous discussed, the Supreme Court noted that the administration of state prisons is a complex task, with numerous administrative goals, including the maintenance of order and discipline within the prison, the prevention of escapes and, to the extent possible, the rehabilitation of the inmates. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some prison practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

v. Fitzgerald, 457 U.S. 800 (1982). Defendants argue that the acts complained of by plaintiff are discretionary acts which are protected by the doctrine of qualified immunity as each defendant was acting in his/her capacity as a federal executive officer and employee at all times relevant to this suit.

Immunity rules, both qualified and absolute, developed for § 1983 actions, apply to Bivens suits. Butz v. Economou, 438 U.S. 478, 500-01 (1978).

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does

>   not violate clearly established statutory or constitutional rights of
>   which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

>   Qualified immunity shields a governmental official from liability for
>   civil monetary damages if the officer's "conduct does not violate
>   clearly established statutory or constitutional rights of which a
>   reasonable person would have known." "In determining whether the
>   specific right allegedly violated was 'clearly established,' the proper
>   focus is not upon the right at its most general or abstract level, but at
>   the level of its application to the specific conduct being challenged."
>   Moreover, "the manner in which this [clearly established] right
>   applies to the actions of the official must also be apparent." As such,
>   if there is a "legitimate question" as to whether an official's conduct
>   constitutes a constitutional violation, the official is entitled to
>   qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995).

Additionally, defendants argue plaintiff's assertion of a liberty interest must fail. The undersigned agrees. Neither prisoners nor would-be visitors have a constitutional right to prison visitation. White v. Keller, 438 F. Supp. 110, 115 (D. Md. 1977) (but leaving open possibility that permanent band on all visitation could implicate Eighth Amendment); Kentucky Dep't of Correctional v. Thompson, 490 U.S. 454, 461 (1989) (no right guaranteed directly by Due Process Clause). Based on the fact prisoners do not have a constitutional right to prison visitation, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the defendants' motion to dismiss be granted on this issue.

## F. PERSONAL JURISDICTION

Defendants argue in their motion to dismiss that it is clear that defendants Lappin, White Compton, Jones and Myers do not have sufficient contact with South Carolina to satisfy the requirements of personal jurisdiction. Defendants argue "the nature of these defendants' contacts with South Carolina, as alleged in the complaint, do not supply a basis upon which the fairness of an exercise of personal jurisdiction over them in this forum would be appropriate." (Defendants' memorandum p. 5-6). Defendants assert that defendant Lappin is the director of the Federal BOP and while he has periodically traveled to federal institutions within South Carolina and may have signed responses to inmate inquiries that were sent to South Carolina, his contacts with the jurisdiction are infrequent at best. Defendants asserts defendant White is the Regional Director for the Mid-Atlantic Region of the BOP and does not include the State of South Carolina. Defendants argue defendant White is responsible for the overall operation of the 15 or so prisons located within her region. Defendants contend "She does not regularly travel to or correspond with inmates located within the boundaries of the state of South Carolina." Further, defendants assert that there is a lack of personal jurisdiction over defendants Compton, Jones and Myers. Defendants argue plaintiff admits that these defendants were all employed at USP Lee County, Virginia, during the times relevant to this complaint and does not allege they had any contact with or took any action within the state of South Carolina at all, much less any that are sufficient to support the exercise of personal jurisdiction over them.

As to the out of state defendants, Lappin, White, Compton, Jones and Myers, plaintiff has failed to make a prima facie showing that these defendants purposefully availed themselves of the privilege of conducting activities within the State of South Carolina. Thus, if the district judge

14

permits this case to go forward, it is recommended that defendants Lappin, White, Compton, Jones and Myers should be dismissed for lack of personal jurisdiction. "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence. New Wellington Fin. v. Flagship Resort Dev., 416 F.3d 290, 294 (4th Cir.2005). "But when, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.*

The Court has conducted the necessary analysis under International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its numerous progeny and concludes that personal jurisdiction over these defendants is wanting. Personal jurisdiction arises out of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Johnson v. Rardin, 952 F.2d 1401, 1401 (10th Cir.1992) (unpublished) (BOP Director does not have sufficient minimum contacts with forum state to support personal jurisdiction); Thornton v. Quinlan, 864 F.Supp. 90, 92 (S.D.Ill.1994) (declining to exercise jurisdiction over Director of Bureau of Prisons whose only contacts with Illinois were in his official capacity).

Based on the above reasons, it is recommended that defendants' motion to dismiss (document #22) be GRANTED. [5]

---

[5] The defendants also contend that certain defendants should be dismissed on the basis that there is no respondeat superior liability for supervisors in a *Bivens* action. While this is generally true, there remain issues of fact surrounding the activity of the various defendants to make such a ruling as a matter of law in a motion to dismiss.

## III.  CONCLUSION

For the reasons set forth herein, it is RECOMMENDED that the defendants' motion to dismiss be GRANTED (document #22).

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 20, 2007
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**